```
 1 | FAYE CHEN BARNOUW, Cal. Bar No. 168631
   | JENNIFER M. BRENNAN, Cal. Bar No. 225473
 2 | FEDERAL TRADE COMMISSION
   | 10877 Wilshire Blvd., Suite 700
 3 | Los Angeles, CA 90024
   | Telephone: (310) 824-4343
 4 | Facsimile:  (310) 824-4380
   | e-mail: fbarnouw@ftc.gov; jmbrennan@ftc.gov
 5 |
   | Attorneys for Plaintiff
 6 | FEDERAL TRADE COMMISSION
```



FILED
CLERK, U.S DISTRICT COURT

MAR 21 2006

CENTRAL DISTRICT OF CALIFORNIA
BY                              DEPUTY

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| FEDERAL TRADE COMMISSION,<br><br>Plaintiff,<br><br>v.<br><br>UNIVERSAL PREMIUM SERVICES, INC., a California corporation (also known as Premier Benefits, Inc.); CONSUMER REWARD NETWORK, INC., a California corporation; STAR COMMUNICATIONS LLC, a California limited liability company; MEMBERSHIP SERVICES DIRECT, INC., a Nevada corporation (also known as Continuity Partners, Inc.); CONNECT2USA, INC., a Nevada corporation; BRIAN K. MACGREGOR; HARIJINDER SIDHU; JOSEPH F. LAROSA, JR.; PRANOT SANGPRASIT; WILLIAM THOMAS HEICHERT; MICHAEL HOWARD CUSHING; PAUL P. TOSI; and MANH CAO,<br><br>Defendants. | Case no. CV06-0849 SJO (OPx)<br><br>[PROPOSED]<br>PRELIMINARY INJUNCTION WITH ASSET FREEZE, APPOINTMENT OF PERMANENT RECEIVER, AND OTHER EQUITABLE RELIEF<br><br>[PERSONAL DATA IDENTIFIERS REFERENCE LIST FILED ON FEBRUARY 14, 2006 UNDER SEAL]<br><br>DOCKETED ON CM<br>MAR 22 2006<br>BY                    006<br><br>Priority<br>Send<br>Enter<br>Closed<br>JS-5/JS-6<br>JS-2/JS-3<br>Scan Only |

## TABLE OF CONTENTS

FINDINGS OF FACT .................................................... 2

ORDER .................................................................. 3
    Definitions ........................................................ 3

PROHIBITED BUSINESS ACTIVITIES ................................ 6
    I.   Prohibited Misrepresentations ................................ 6
    II.  Prohibition Against Causing Billing Information to Be Submitted Without the Express Informed Consent of the Customer ........ 7
    III. Prohibition Against Violating Telemarketing Sales Rule ....... 8

ASSET PROVISIONS ................................................... 9
    IV.  Asset Freeze ................................................... 9
    V.   Retention of Assets and Documents by Financial Institutions and Other Third Parties ........................................ 12
    VI.  Repatriation of Foreign Assets ............................... 14
    VII. Interference with Repatriation ............................... 16

RECEIVERSHIP PROVISIONS ....................................... 16
    VIII. Appointment of Permanent Receiver ......................... 16
    IX.  Permanent Receivership Duties ............................. 17
    X.   Cooperation with the Receiver ............................... 21
    XI.  Delivery of Receivership Property ........................... 23
    XII.  Transfer of Funds to the Receiver ........................... 24
    XIII. Collection of Receivership Defendants' Mail ................. 24
    XIV. Compensation of Permanent Receiver ....................... 25
    XV.  Receiver's Bond .............................................. 26
    XVI. Immediate Access to Defendants' Business Premises, Books and Records ............................................ 26
    XVII. Defendants' Access to Receivership Defendants' Business Premises 29
    XVIII. Stay of Actions ............................................. 29

DEFENDANTS' REPORTING AND RELATED OBLIGATIONS ........ 31
    XIX.  Distribution of Order by Defendants ........................ 31
    XX.   Financial Statements and Accounting ...................... 32
    XXI.  Preservation of Records .................................... 33
    XXII.  Record Keeping ............................................ 34
    XXIII. Notification re Defendants' Business Activities ............. 34

MISCELLANEOUS PROVISIONS ..................................... 35
    XXIV.  Expedited Discovery ...................................... 35
    XXV.   Credit Reports ............................................ 36
    XXVI.  Correspondence .......................................... 36
    XXVII. Service of this Order ..................................... 36
    XXVIII. Expiration of this Order ................................. 37
    XXIX.  Retention of Jurisdiction ................................. 37

Plaintiff Federal Trade Commission ("FTC" or "Commission"), pursuant to Sections 13(b) and 19(a) of the Federal Trade Commission Act ("FTC Act"), 15 U.S.C. §§ 53(b) and 57b(a), and the Telemarketing and Consumer Fraud and Abuse Prevention Act ("Telemarketing Act"), 15 U.S.C. §§ 6101 *et seq.*, filed a Complaint for Permanent Injunction and Other Equitable Relief, and applied *ex parte* for a Temporary Restraining Order and for an order to show cause why a Preliminary Injunction should not be granted and a Permanent Receiver should not be appointed, pursuant to Rule 65 of the Federal Rules of Civil Procedure, on February 14, 2006. On the FTC's *ex parte* application, this Court filed a Temporary Restraining Order with asset freeze, appointment of a temporary receiver, and other equitable relief, and an order to show cause why a Preliminary Injunction should not issue and why a Permanent Receiver should not be appointed ("TRO") against defendants on February 21, 2006. A hearing on the Order to Show Cause was held on March 13, 2006.

Having considered the pleadings, memoranda, declarations, and other exhibits filed in connection with the order to show cause, and argument of counsel at the hearing on the order to show cause, the Court **HEREBY GRANTS** Plaintiff FTC's request for a preliminary injunction against Defendants and appointment of a permanent receiver, based on the findings and grounds set forth in the Court's oral ruling at the March 13, 2006 hearing on the Order to Show Cause and the Court's "Order Granting Plaintiff Federal Trade Commission's Application for Preliminary Injunction and Appointment of Permanent Receiver," entered March 15, 2006 ("March 15, 2006 Order Granting Preliminary Injunction").

This "Preliminary Injunction with Asset Freeze, Appointment of Permanent Receiver, and Other Equitable Relief" ("this Order") has been prepared pursuant to the Court's March 15, 2006 Order Granting Preliminary Injunction and reflects the agreements concerning living expenses and attorneys' fees that counsel for Plaintiff and counsel for Defendants Brian MacGregor and Membership Services Direct (the

1

1  "MacGregor Defendants"), and Joseph F. LaRosa, Jr., Pranot Sangprasit, William
2  Heichert, Michael H. Cushing, Paul Tosi, and Manh Dac Cao (the "Genga
3  Represented Defendants") entered into at the direction of the Court at the
4  commencement of the March 13, 2006 hearing on the Order to Show Cause, as
5  stated on the record at that hearing.

## FINDINGS OF FACT

The Court has considered the pleadings, declarations, exhibits, and memoranda filed in support of the Commission's application and finds that:

1. This Court has jurisdiction of the subject matter of this case, and there is good cause to believe it will have jurisdiction over all parties, pursuant to 15 U.S.C. §§ 45(a) and 53(b), and 28 U.S.C. §§1331, 1337(a) and 1345. The Complaint states a claim upon which relief may be granted under Sections 5 and 13(b) of the FTC Act, 15 U.S.C. §§ 45 and 53(b).

2. There is good cause to believe that Defendants have engaged in and are likely to engage in acts and practices that violate Section 5(a) of the FTC Act, 15 U.S.C. § 45(a), and the Telemarketing Sales Rule ("TSR"), 16 C.F.R. Part 310, and that the Commission is likely to prevail on the merits of this action.

3. There is good cause to believe that immediate and irreparable harm to consumers will result from Defendants' ongoing violations of the FTC Act and Telemarketing Sales Rule unless Defendants are immediately restrained and enjoined by Order of this Court.

4. There is good cause to believe that immediate and irreparable damage to the Court's ability to grant effective final relief in the form of monetary restitution will occur from the sale, transfer, or other disposition or concealment by Defendants of their assets or corporate records, unless Defendants are immediately enjoined by Order of this Court. The evidence set forth in the Plaintiff's *Ex Parte* TRO Application, Supplemental Brief, and accompanying declarations and exhibits,

shows that the FTC is likely to prove that Defendants have engaged in a concerted course of illegal activity in connection with the telemarketing of membership programs and other goods and services to consumers nationwide, in violation of Section 5 of the FTC Act and the TSR. Thus there is good cause to believe that the Defendants will attempt to conceal the scope of their illegal actions to avoid returning their ill-gotten gains to consumers injured by their unlawful practices if not restrained from doing so by Order of this Court.

5. There is good cause for the Court to order an asset freeze and appoint a permanent receiver for the Receivership Defendants. The FTC has made a *prima facie* case that the Receivership Defendants have made misrepresentations, directly and through their employees, to those consumers for whom they are supposed to be providing goods or services; that Defendants have engaged in a widespread effort to debit money from these consumers based on deceptive or abusive acts and practices; and that Defendants have retained ill-gotten gains from these and other practices. Accordingly, a permanent receiver and asset freeze are reasonably necessary in order to preserve the possibility of complete and meaningful relief at the conclusion of this litigation.

6. Weighing the equities and considering the Commission's likelihood of ultimate success, this Preliminary Injunction with asset freeze, appointment of a permanent receiver, and other equitable relief is in the public interest.

7. No security is required of any agency of the United States for issuance of a restraining order. Fed. R. Civ. P. 65(c).

## ORDER

### Definitions

For purposes of this Order, the following definitions shall apply:

1. "Assets" means any legal or equitable interest in, right to, or claim to, any real or personal property, including, without limitation, chattels, goods,

3

instruments, equipment, fixtures, general intangibles, leaseholds, mail or other deliveries, inventory, checks, notes, accounts, credits, contracts, receivables, shares of stock, and all cash, wherever located.

2. "Customer," "seller," "telemarketer," and "telemarketing" are defined as in Section 310.2 of the TSR, 16 C.F.R. § 310.2.

3. "Defendants" means Universal Premium Services, Inc., a California Corporation (also known as Premier Benefits, Inc.); Consumer Reward Network, Inc., a California Corporation; Star Communications LLC, a California Limited Liability Company; Membership Services Direct, Inc., a Nevada Corporation (also known as Continuity Partners, Inc.); Connect2USA, Inc., a Nevada Corporation; Brian K. MacGregor; Harijinder Sidhu; Joseph F. LaRosa, Jr.; Pranot Sangprasit; William Thomas Heichert; Michael Howard Cushing; Paul P. Tosi; and Manh Dac Cao (aka Mike Cao), and each of them, by whatever names each might be known. Pursuant to the provisions of Fed. R. Civ. P. 65(d), the provisions of this Order shall be binding upon the Defendants and upon their officers, agents, directors, employees, salespersons, independent contractors, attorneys, subsidiaries, affiliates, successors, assigns and all other persons or entities in active concert or participation with them who receive actual notice of this Order by personal service or otherwise, whether acting directly or through any trust, corporation, subsidiary, division or other device.

4. "Corporate Defendants" means Universal Premium Services, Inc., a California Corporation (also known as Premier Benefits, Inc.); Best Buy Alliance, Inc., a California Corporation (also known as Consumer Reward Network, Inc.); Star Communications LLC, a California Limited Liability Company; Membership Services Direct, Inc., a Nevada Corporation (also known as Continuity Partners, Inc.); and Connect2USA, Inc., a Nevada Corporation, and their affiliates and subsidiaries, and any other corporations or businesses under the control of any of them.

5. **"Document"** is synonymous in meaning and equal in scope to the usage of the term in Federal Rule of Civil Procedure 34(a), and includes writings, drawings, graphs, charts, photographs, audio and video recordings, computer records, and any other data compilations from which information can be obtained. A draft or non-identical copy is a separate document within the meaning of the term.

6. **"Financial institution"** means any bank, savings and loan institution, credit union, or any financial depository of any kind, including but not limited to any brokerage house, trustee, broker-dealer, escrow agent, title company, commodity trading company, precious metal dealer, commercial check cashing facility, or any entity or person that holds, controls, or maintains custody of any account or asset of any Defendant.

7. **"ID#"** refers to the unique identifiers and personal identifiers listed in the "Personal Data Identifiers Reference List,'" filed on February 14, 2006 in the above-captioned matter under seal pursuant to Local Rule 79-5.4.

8. **"Individual Defendants"** means Brian K. MacGregor, Harijinder Sidhu, Joseph F. LaRosa, Jr., Pranot Sangprasit, William Thomas Heichert, Michael Howard Cushing, Paul P. Tosi, and Manh Dac Cao (aka Mike Cao).

9. **"Material"** means likely to affect a person's choice of, or conduct regarding, goods or services.

10. **"Person"** means a natural person, organization, or other legal entity, including a corporation, partnership, proprietorship, association, cooperative, government or governmental subdivision or agency, or any other group or combination acting as an entity.

11. **"Plaintiff"** means the Federal Trade Commission.

12. **"Receivership Defendants"** means Universal Premium Services, Inc., a California Corporation (also known as Premier Benefits, Inc.); Best Buy Alliance, Inc., a California Corporation (also known as Consumer Reward Network, Inc.); Star Communications LLC, a California Limited Liability Company; Membership

5

1 Services Direct, Inc., a Nevada Corporation (also known as Continuity Partners,
2 Inc.); Connect2USA, Inc., a Nevada Corporation; Merchant Risk Management, Inc.
3 a Nevada corporation; All Star Access, Inc., a Colorado Corporation; Prime Time
4 Ventures, Inc., a Nevada Corporation; Pantel One Corporation, a Nevada
5 Corporation; Mammoth Consulting Group, LLC, a Nevada Limited Liability
6 Company; World Era Development Limited, a Hong Kong entity; Blitz Media, Inc.,
7 a Nevada Corporation; Impact Marketing, Inc., a Wyoming Corporation; Synergy
8 Marketing Group LLC, a California Limited Liability Company; Utalk Unlimited,
9 Inc., a Nevada corporation; and their affiliates and subsidiaries, and any other
10 corporations or businesses under the control of any of the Defendants.

11     13. "Receiver" means the permanent receiver appointed in this Order. The
12 term "receiver" also includes any deputy receivers as may be named by the
13 permanent receiver.

## PROHIBITED BUSINESS ACTIVITIES

### I.
### Prohibited Misrepresentations

17     IT IS THEREFORE ORDERED that in connection with the advertising,
18 promotion, offering or sale of goods or services by telephone or otherwise in
19 commerce, Defendants, as well as their successors, assigns, officers, agents,
20 directors, servants, employees, salespersons, independent contractors, attorneys,
21 corporations, subsidiaries, all other persons or entities directly or indirectly under
22 their control or under common control with any of them, and all other persons or
23 entities in active concert or participation with any of them who receive actual notice
24 of this Order by personal service or otherwise, whether acting directly or through
25 any corporation, subsidiary, division, or other device, including, but not limited to,
26 fictitious business names, and each such person, in connection with the advertising,
27 promotion, offering or sale of goods or services by telephone or otherwise in
28 commerce, are hereby preliminarily restrained and enjoined from making any

6

express or implied representation or omission of material fact that is false or misleading, in any manner, orally or in writing, to any consumer or entity, including, but not limited to, any misrepresentation that:

    A. Defendants will send the consumers a free item if the consumers pay a shipping and handling fee;

    B. Defendants provide a free trial period during which time the consumers will not be charged fees;

    C. Defendants provide a cancellation period during which time the consumers may obtain a refund for fees already paid;

    D. Consumers may cancel their memberships in Defendants' programs at any time; and

    E. Defendants are affiliated with or endorsed or sponsored by a person or government entity.

## II.
### Prohibition Against Causing Billing Information to Be Submitted Without the Express Informed Consent of the Customer

IT IS FURTHER ORDERED that in connection with the advertising, promotion, offering or sale of goods or services by telephone or otherwise in commerce, Defendants are hereby preliminarily restrained and enjoined from causing billing information to be submitted for payment, directly or indirectly, without the express informed consent of the customer. For purposes of this Section, "express informed consent" means:

    A. Defendants obtain from the customer the entire account number to be charged;

    B. Defendants obtain from the customer his or her express agreement to be charged for the goods or services and to be charged using the account number provided by the customer;

  C. Defendants make and maintain an audio recording of the entire telemarketing transaction; and

  D. The telemarketing transaction did not involve any deceptive or abusive telemarketing practices, as defined in the TSR.

### III.
### Prohibition Against Violating Telemarketing Sales Rule

IT IS FURTHER ORDERED that in connection with the advertising, promotion, offering or sale of goods or services by telephone or otherwise in commerce, Defendants are hereby preliminarily restrained and enjoined from violating any provision of the Telemarketing Sales Rule, 16 C.F.R. Part 310, including but not limited to:

  A. Section 310.3(a)(2)(iv), which prohibits misrepresenting any material aspect of the nature or terms of the seller's refund, cancellation, exchange, or repurchase policies;

  B. Section 310.3(a)(2)(vii), which prohibits misrepresenting a seller's or telemarketer's affiliation with, or endorsement or sponsorship by, any person or government entity;

  C. Section 310.4(a)(1), which prohibits any seller or telemarketer from using threats, intimidation, or the use of profane or obscene language;

  D. Section 310.4(a)(6), which prohibits causing billing information to be submitted for payment without the express informed consent of the customer;

  E. Section 310.4(b)(1)(iii)(A), which prohibits telemarketers from engaging in, or sellers from causing a telemarketer to engage in certain conduct, including, *inter alia*, initiating any outbound telephone call to a person when that person previously has stated that he or she does not wish to receive an outbound telephone call made by or on behalf of the seller whose goods or services are being offered; and

F.  Section 310.3(b), which prohibits any person from providing substantial assistance or support to any seller or telemarketer when that person knows or consciously avoids knowing that the seller or telemarketer is engaged in any act or practice that violates Telemarketing Sales Rule Sections 310.3(a), (c), or (d) or 310.4.

## ASSET PROVISIONS

### IV.
### Asset Freeze

IT IS FURTHER ORDERED that each Defendant is hereby preliminarily restrained and enjoined from:

A.  Transferring, liquidating, converting, encumbering, pledging, loaning, selling, concealing, dissipating, disbursing, assigning, spending, withdrawing, granting a lien or security interest or other interest in, or otherwise disposing of any funds, real or personal property, accounts, contracts, consumer lists (including lists of consumer names, telephone numbers, addresses, or account numbers, or other consumer data), shares of stock, or other assets, or any interest therein, wherever located, that are: (1) owned or controlled by any Defendant, in whole or in part; (2) in the actual or constructive possession of any Defendant; or (3) owned, controlled by, or in the actual or constructive possession of any corporation, partnership, or other entity directly or indirectly owned, managed, or controlled by any Defendant, including, but not limited to any assets held by or for, or subject to access by, any of the Defendants, at any bank or savings and loan institution, or with any broker-dealer, escrow agent, title company, commodity trading company, precious metals dealer, or other financial institution or depository of any kind;

B.  Opening or causing to be opened any safe deposit boxes titled in the name of any Defendant, or subject to access by any of them;

C.  Incurring charges or cash advances on any credit card issued in the name, singly or jointly, of any Defendant; and

D. Incurring liens or other encumbrances on real property, personal property or other assets in the name, singly or jointly, of any Defendant.

*Provided*, that the assets affected by this Section shall include all assets of the Defendants as of the time the TRO issued in this case was entered.

*Provided further*, that the freeze imposed in this Section shall be construed not to apply to the assets that the Individual Defendants acquire following service of the TRO issued in this case only if the Individual Defendant can prove that such assets are not derived from activity prohibited by this Order and are not derived from any other violation of Section 5(a) of the FTC Act, 15 U.S.C. § 45(a).

E. Notwithstanding the above, this Court permits a limited lift of the asset freeze with respect to the Genga Represented Defendants (and to Harijinder Sidhu, but only to the extent not covered by Paragraph F) in the sum total of $2,500 <u>each</u> per month to pay for ordinary living expenses. Brian MacGregor and corporate defendant Membership Services Direct are permitted to a limited lift of the asset freeze in the collective sum total of $5,000.00 per month to pay for ordinary living expenses, including child support payments to Brian MacGregor's children.

F. Harijinder Sidhu agrees to forego the limited lift of the asset freeze in the amount of $2,500 per month for ordinary living expenses for the approximately $10,000 cash that the FTC has already taken pursuant to the asset freeze. Harijinder Sidhu's wife Ranee Sidhu is not prohibited under this Order from using her own personal funds to pay for Harijinder Sidhu's ordinary living expenses or attorneys' fees, to the extent that such funds are not frozen pursuant to this Order. These funds include her personal bank accounts for which Harijinder Sidhu is not a signatory and does not have authority to withdraw funds, or from her own personal line of credit for which Harijinder Sidhu or his frozen assets is not a guarantor.

G. In addition, this court permits a limited lift of the asset freeze with respect to the liquid assets of defendants Joseph LaRosa, Pranot Sangprasit, William Heichert, Michael H. Cushing, Paul Tosi, Manh Dac Cao, and Brian MacGregor to

1  pay those defendants' attorneys' fees, pursuant to the agreement of counsel for
2  Plaintiff and counsel for these defendants, limited as follows:
3       1.   Genga & Associates, P.C. is counsel for defendants Joseph
4  LaRosa, Pranot Sangprasit, William Heichert, Michael H. Cushing, Paul Tosi, and
5  Manh Dac Cao. Manatt, Phelps & Phillips LLP is counsel for defendants Brian
6  MacGregor and Membership Services Direct, Inc. These limitations apply to any
7  future counsel retained by these defendants in the event current defense counsel
8  withdraws from further representation from in this matter. These defendants are
9  responsible for notifying any future defense counsel as to these limitations.
10      2.   Attorneys' fees incurred by each of these law firms, which their
11 individual defendant clients may pay from their frozen funds, are capped at
12 $360/hour for one senior attorney and $180/hour for one junior attorney, with a
13 maximum of 20 hours/week to be expended on this case by each attorney. Only
14 attorneys fees incurred for substantive defense of this action and compliance with
15 the TRO, this Order, and future Court orders may be paid from frozen funds.
16 Attorneys' fees for time spent arguing over attorneys' fees and other issues which do
17 not involve substantive defense of this case or compliance with this Court's orders
18 may not be paid out of frozen funds. Work that can be done by clerks charging a
19 lower rate should be done by such clerks. Costs that can be minimized should be
20 minimized. Attorneys' fees to be paid from these frozen funds shall not exceed
21 $10,000/week for the case. Attorneys' fees to be paid from these frozen funds shall
22 not exceed $25,000 up through the March 13, 2006 hearing on the Order to Show
23 Cause. Counsel shall submit their attorneys' fee bills (redacted for attorney work
24 product) to the FTC, and the parties shall jointly submit periodic stipulations to the
25 Court requesting release of funds for attorneys' fees which comply with this Section.
26 This provision does not prevent these individual defendants from paying attorneys
27 fees using their assets which are not frozen pursuant to this Order.
28

H. No such expenses or fees, however, shall be paid from funds subject to the asset freeze set forth in this Order except from cash on the person of Defendant, or from an account designated by prior written notice to Plaintiff FTC.

I. In addition, on or before the fifth (5th) day of each month, Brian MacGregor and Membership Services Direct shall, individually or through their respective counsel, submit a "Monthly Statement of Monies Received" to the Receiver that will be accompanied with a signed declaration that the monies received as stated are true and accurate. Furthermore, Brian MacGregor and Membership Services Direct or their counsel shall submit a "Notice of Expenditures to the Permanent Receiver" on or before the fifth (5th) day of each month. Attached to the "Notice of Expenditures to the Permanent Receiver" shall be a signed declaration by the defendant that the expenditures as stated are true and accurate.

## V.
### Retention of Assets and Documents by Financial Institutions and Other Third Parties

IT IS FURTHER ORDERED that, until entry of a final judgment in this case, any financial institution, or any person or other entity served with a copy of this Order, or who otherwise has actual knowledge of this Order, shall:

A. Hold and retain within such financial institution's, person's or other entity's control, and prohibit the withdrawal, removal, assignment, transfer, pledge, hypothecation, encumbrance, disbursement, dissipation, conversion, sale, liquidation, or other disposal of any funds, documents, property, or other assets held by or under such financial institution's, person's or other entity's control that are held:

1. on behalf of, or for the benefit of, any Defendant or any other party subject to Section IV (Asset Freeze) above;

  2. in any account maintained in the name of, or subject to withdrawal by, any Defendant or any other party subject to Section IV (Asset Freeze) above; or

  3. that are subject to access or use by, or under the signatory power of, any Defendant or any other party subject to Section IV (Asset Freeze) above.

*Provided* that transfers or withdrawals may be made under this Section if authorized in writing by counsel for Plaintiff (with respect to assets of any of the Individual Defendants), by the Receiver and counsel for Plaintiff (with respect to assets of any of the Receivership Defendants), or by further order of this Court;

 B. Deny access to any safe deposit box that is either:

  1. titled in the name, individually or jointly, of any Defendant or other party subject to Section IV (Asset Freeze) above; or

  2. subject to access by any Defendant or other party subject to Section IV (Asset Freeze) above;

*provided* that, immediate access shall be granted to Plaintiff FTC for the purpose of determining the contents of such safe deposit boxes.

 C. To the extent not already provided pursuant to the TRO issued in this case, provide to counsel for the FTC, within three (3) calendar days, a statement setting forth:

  1. the identification of each account or asset titled in the name, individually or jointly, or held on behalf of, or for the benefit of, Defendants or other party subject to Section IV (Asset Freeze) above, whether in whole or in part;

  2. the balance of each such account, or a description of the nature and value of such asset;

  3. the identification of any safe deposit box that is either titled in the name of, individually or jointly, or is otherwise subject to access or control by, any Defendant or other party subject to Section IV (Asset Freeze) above, whether in whole or in part; and

13

    4. the identification of any account or safe deposit box which a Defendant has closed within the past four years, the date closed, and the balance on said date.

  D. Upon request by counsel for Plaintiff (with respect to assets held for any of the Defendants) or the Receiver (with respect to assets held for any of the Receivership Defendants), promptly provide Plaintiff or the Receiver with copies of all records or other documentation pertaining to such account or asset, including but not limited to originals or copies of account applications, account statements, signature cards, checks, drafts, deposit tickets, transfers to and from the accounts, all other debit and credit instruments or slips, currency transaction reports, 1099 forms, and safe deposit box logs.

  E. At the direction of Plaintiff (with respect to assets held for any of the Defendants) or the Receiver (with respect to assets held for any of the Receivership Defendants), and without further order of this Court, convert any stocks, bonds, options, mutual funds, or other securities to their cash equivalents.

*Provided* that the accounts subject to this Section include existing assets and assets deposited after the effective date of this Order. This Section shall not prohibit transfers in accordance with any provision of this Order, or any further order of the Court.

*Provided further* that the FTC is granted leave, pursuant to Fed. R. Civ. P. 45, to subpoena documents immediately from any such financial institution, account custodian, other entity or person, concerning the nature, location, status, and extent of Defendants' assets, and compliance with this Order, and such financial institution, account custodian, other entity or person shall respond to such subpoena within five (5) business days after service. For purposes of this subsection, the FTC may serve any such subpoena by facsimile, overnight courier, or e-mail (Adobe Acrobat .pdf files only).

## VI.
### Repatriation of Foreign Assets

IT IS FURTHER ORDERED that, within five (5) business days following the service of this Order:

A. To the extent not already provided pursuant to the TRO issued in this case, each Defendant shall provide the FTC with a full accounting of all assets, accounts or documents outside of the territory of the United States which are held either: (1) by the Defendant; (2) for the Defendant's benefit; (3) in trust by or for the Defendant; or (4) under the Defendant's direct or indirect control. This accounting shall include a list of all scripts, correspondence, and recordings which are in the custody of any telemarketing call center used by the Defendant. Each Receivership Defendant shall also provide this accounting to the Receiver.

B. Each Individual Defendant:

1. To the extent they have not already done so pursuant to the TRO issued in this case, shall transfer to a financial institution or other entity within the territory of the United States all assets, accounts or documents in foreign countries held either: (1) by the Defendant; (2) for the Defendant's benefit; (3) in trust by or for the Defendant; or (4) under the Defendant's direct or indirect control.

2. The same business day, shall, to the extent they have not already done so pursuant to the TRO issued in this case: (1) notify counsel for the FTC of the name and location of the financial institution or other entity that is the recipient of such funds, documents or assets; and (2) serve this Order on any such financial institution or other entity.

3. Shall hold and retain all repatriated assets, accounts or documents and prevent any transfer, disposition, or dissipation whatsoever of any such assets or documents except as allowed by Section IV (Asset Freeze) of this Order.

1  These assets, accounts or documents shall include all scripts, correspondence, and
2  recordings which are in the custody of any telemarketing call center used by any
3  Defendant.

## VII.
## Interference with Repatriation

IT IS FURTHER ORDERED that Defendants are hereby preliminarily restrained and enjoined from taking any action, directly or indirectly, which may result in the encumbrance or dissipation of foreign assets, or in the hindrance of the repatriation required by Section VI (Repatriation of Foreign Assets) of this Order, including but not limited to:

   A.   Sending any statement, letter, fax, e-mail or wire transmission, or telephoning or engaging in any other act, directly or indirectly, that results in a determination by a foreign trustee or other entity that a "duress" event has occurred under the terms of a foreign trust agreement until such time that all assets have been fully repatriated pursuant to Section VI (Repatriation of Foreign Assets) of this Order;

   B.   Notifying any trustee, protector or other agent of any foreign trust or other related entities of either the existence of this Order, or of the fact that repatriation is required pursuant to a Court Order, until such time that all assets have been fully repatriated pursuant to Section VI (Repatriation of Foreign Assets) of this Order.

## RECEIVERSHIP PROVISIONS

## VIII.
## Appointment of Permanent Receiver

IT IS FURTHER ORDERED that Robb Evans & Associates LLC is hereby appointed Permanent Receiver for the Receivership Defendants, with the full power of an equity receiver. The Receiver shall be the agent of this Court, and solely the agent of this Court, in acting as Receiver under this Order. The Receiver shall be

accountable directly to this Court. The Receiver shall comply with all Local Rules of this Court governing receivers.

## IX.
## Permanent Receivership Duties

IT IS FURTHER ORDERED that the Receiver is authorized and directed to accomplish the following:

A. Assume full control of the Receivership Defendants by removing, as the Receiver deems necessary or advisable, any director, officer, manager, independent contractor, employee, or agent of any of the Receivership Defendants, including any Defendant, from control of, management of, or participation in, the affairs of the Receivership Defendants;

B. Take exclusive custody, control, and possession of all assets and documents of, or in the possession, custody, or under the control of, the Receivership Defendants, wherever situated. The Receiver shall have full power to divert mail and to sue for, collect, receive, take in possession, hold, and manage all assets and documents of the Receivership Defendants and other persons or entities whose interests are now held by, or are under the direction, possession, custody, or control of, the Receivership Defendants. The Receiver shall assume control over the income and profits therefrom and all sums of money now or hereafter due or owing to the Receivership Defendants. *Provided, however*, that the Receiver shall not attempt to collect any amount from a consumer if the Receiver believes the consumer was a victim of the deceptive or abusive acts or practices alleged in the Complaint in this matter, without prior Court approval;

C. Take all steps necessary to secure all premises owned, rented, leased, or otherwise controlled by the Receivership Defendants, including:

 1. Premises at which Defendants' business operations are physically located, including:

 3800 Howard Hughes Parkway, Suite 500, Las Vegas, NV 89109

    4340 S. Valley View Blvd., Suite 224, Las Vegas, NV 89103

    4699 Industrial Road, #206, Las Vegas, NV 89103

    2800 West Sahara, Suite 7C, Las Vegas, NV 89102

    2.    The Receivership Defendants' portion of shared space in the following office suite:

    21241 Ventura Blvd., Suite 253, Woodland Hills, CA 91364

    3.    Virtual offices services (including voice mail and mail collection services) provided to any of the Receivership Defendants at the following addresses:

    1800 Century Park East, Suite 600, Los Angeles, CA 90067

    400 Continental Blvd., Suite 600, El Segundo, CA 90245

    333 City Blvd., 17th Floor, Orange, CA 92868

    4.    Post office boxes and private mailboxes rented by the Defendants, including:

    P.O. Box 17130, Las Vegas, NV 89114

    P.O. Box 18434, Las Vegas, NV 89114

    P.O. Box 46230, Las Vegas, NV 89114

    6433 Topanga Canyon Blvd., PMB #801, Canoga Park, CA 91303

    6433 Topanga Canyon Blvd., PMB #402, Canoga Park, CA 91303

    6433 Topanga Canyon Blvd., PMB #509, Canoga Park, CA 91303

    1442 E. Lincoln Ave., PMB #361, Orange, CA 92865

    700 North Colorado Blvd., PMB #338, Denver Colorado 80206

Such steps may include, but are not limited to, any of the following, as the Receiver deems necessary or advisable: (1) serving this Order; (2) completing a written inventory of all receivership assets; (3) obtaining pertinent information from all employees and other agents of the Receivership Defendants, including, but not limited to, the name, home address, social security number, job description, passwords or access codes, method of compensation, and all accrued and unpaid commissions and compensation of each such employee or agent; (4) photographing